# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JOVANNI MONTE TAYLOR,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:21CV00556 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **MULLINS, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |
| ) | |

*Jovanni Monte Taylor, Pro Se Plaintiff; Ann-Marie C. White,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants.*

The plaintiff, Jovanni Monte Taylor, a Virginia inmate proceeding pro se, filed a Complaint under 42 U.S.C. § 1983, alleging that prison officials violated her constitutional rights when they caused her to miss two days of work at her prison job or failed to address this problem.[1]  After review of the record, I conclude that the defendants' Motion to Dismiss must be granted.

## I.  BACKGROUND.

Taylor is confined at Keen Mountain Correctional Center ("Keen Mountain"), a facility operated by the Virginia Department of Corrections ("VDOC").  She alleges that on March 6, 2021, she tried to report for her job as a food service worker.

---

[1] Although confined at a prison for male inmates, Taylor uses feminine pronouns in reference to herself.

"[She] was not allowed to go to work due to a supposed lack of female staff," since "only a female officer could strip search [Taylor's] person." Compl. 2, ECF No. 1. Captain Owens informed Taylor that the only female officer working that morning was "up front and could not search" her. *Id.* Owens promised that he would find a female officer to search Taylor, but Taylor waited all day and was not allowed to go to her job because no female officer came to search her. Other inmates who worked food service jobs on March 6, 2021, later informed Taylor that Officer Little (a female officer) was in the food service area all day. Taylor reports that these events occurred on Saturday and Sunday, March 6 and 7, 2021.

Taylor wrote a request form, complaining about no female officer being available to search her before work on these days. On March 18, 2021, defendant Harrison responded, "This issue has been addressed." *Id.* at 3. He advised that if the search issue arose again, Taylor should send a request form to "IPM Meadows." *Id.*; Ex. 1, ECF No. 1-1. Harrison warned, however, that staff scheduling would not be discussed with inmates. Taylor also alleges that on April 3, 2021, while she was waiting in the medical unit, crying, she saw Officer Little walk past three times. Yet, Little did not come to search Taylor so she could work on that day.

On April 5, 2021, Taylor filed a grievance asserting discrimination and equal protection violations. Defendant Breeding responded on April 20, 2021, stating that the grievance was untimely filed. Regional Ombudsman Curtis Parr upheld

Breeding's decision.  Taylor's other complaint forms in March 2021 met with similarly unsatisfactory responses from S.K. Owens.  When Taylor wrote a complaint on March 12, 2021, complaining of lack of gender equality, S.K. Owens responded that her complaint was repetitive.  On March 12, 2021, Taylor wrote another complaint asking for compensation for two days of work that she missed because of alleged gender inequality.  S.K. Owens rejected this complaint as repetitive of prior ones.

At some point during these efforts, Taylor claims that she spoke with the Warden, unit managers, kitchen staff, the lieutenant, and psychology associate Mullins about her "increased dysphoria and tremendous sense of despondency." Compl. 4, ECF No. 1.  Mullins offered to put Taylor "on medication, and offered many positive affirmations."  *Id.*  Mullins allegedly did not "offer any help as to ensuring the Institution [Keen Mountain] knew the many situations when making [Taylor] unstable."  *Id.*  Taylor claims that "[t]hese situations based on discrimination" have caused her hair to fall out, triggered stress, loss of appetite, lack of sleep, headaches, and "disturbances in [her] mental and emotional stability."  *Id.*

Taylor sues Mullins, Little, Harrison, S.K. Owens, Breeding, Captain Owens, and Parr, seeking monetary damages and injunctive relief to be transferred and protected from harm.  These defendants have filed a Motion to Dismiss, and Taylor has responded, making the matter ripe for consideration.

II. DISCUSSION.

A. Standards of Review.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).[2] The court's inquiry must focus only on whether the allegations constitute "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). In considering a Rule 12(b)(6) motion, a court must accept all *factual* allegations in the complaint as true.

To state an actionable claim, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

---

[2] I have omitted citations, internal alterations, or quotation marks here and throughout unless otherwise noted.

conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

### B. Taylor's Claims.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construed, Taylor's Complaint contends that the defendants failed to ensure that she could attend her prison work assignment in light of the particular accommodations she had requested because of her transgender status.

Prisoners do not have a constitutionally protected right to work while incarcerated, or to participate regularly in a particular job once assigned. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) ("[T]he classifications and work assignments of prisoners in such institutions are matters of prison administration, within the discretion of the prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of such discretion.). Thus, by itself, Taylor's claim that the defendants deprived her of a federal right to work at her assigned prison job for two or three days does not rise to constitutional proportions actionable under § 1983.

The gist of Taylor's claim appears to be that the defendants deprived her of the opportunity to perform her assigned prison job duties because of her transgender status. Thus, I also construe her claim as asserting an equal protection violation.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220–22 (4th Cir. 2016). To succeed in an equal protection claim, Taylor must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willis v. Town of Marshall,* 426 F.3d 251, 263 (4th Cir. 2005). On the other hand, a defendant's action treating the plaintiff differently than other similarly situated inmates "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine if an action or policy is reasonable, I must consider: (1) whether there is a "valid, rational connection" between the policy and the penological interest; (2) whether there is an "alternative means of exercising the right" available to inmate; (3) the "impact accommodation of the asserted constitutional right will have on" various prison constituents and resources; and (4) "the absence of ready alternatives." *Id.* at 89, 90.

Because of the special accommodations for frisk searches that Taylor has requested due to her transgender status, I conclude that she has not shown that she

was similarly situated in all relevant respects to the other inmates in the male prison where she is confined. Male inmates were able to attend their work assignments on the days in question because male officers were available to frisk them. Taylor's unique situation as a trans woman confined in a male prison required that she must be searched by a female officer. Taylor complains that a female officer was present at the prison on the days in question, but that this officer, defendant Little, did not leave her workstation to frisk Taylor so that she could perform her prison job duties.

While it may seem unfair to Taylor that the female officer did not make special accommodations for her, by coming to perform the necessary frisk search, I cannot find that this sequence of facts supports any violation of Taylor's constitutional rights. As a previously male individual, housed in a male prison, who now requires a female officer to frisk her, Taylor simply is not similarly situated to the other male inmates in the facility. She has unique characteristics, and VDOC policies have been adjusted to require unique search procedures to protect her, such as the female officer being required to frisk her. Yet, if the facility employs few female officers, as is clearly the case at Keen Mountain according to Taylor's own allegations, then it is rationally related to legitimate penological interests not to pull a lone female officer from her assigned post to frisk Taylor. For these reasons, I will grant the Motion to Dismiss as to Taylor's claim of different treatment based on her transgender status.

### III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** that the Motion to Dismiss, ECF No. 13, is GRANTED.

A separate Judgment will enter herewith.

        ENTER: July 27, 2022

        /s/  JAMES P. JONES
        Senior United States District Judge